Ali RUCKBI, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 97–1992.

United States Court of Appeals, First Circuit.

Heard Sept. 11, 1998.

Decided Oct. 28, 1998.

Linda A. Cristello, with whom Allan M. Tow, was on brief, for petitioner.

Karen Ann Hunold, Trial Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, with whom Frank W. Hunger, Assistant Attorney General, Karen Fletcher Torstenson, Assistant Director, and Linda S. Wendtland, Senior Litigation Counsel, were on brief, for respondent.

Before TORRUELLA, Chief Judge, BOUDIN and STAHL, Circuit Judges.

TORRUELLA, Chief Judge.

Petitioner Ali Ruckbi ("Ruckbi") seeks review of a Board of Immigration Appeals ("BIA") decision affirming an Immigration Judge's ("IJ") denial of his application for adjustment of status pursuant to section 245 of the Immigration and Nationality Act ("the Act"), 8 U.S.C. § 1255, and voluntary departure under section 244(e) of the Act, 8 U.S.C. § 1254(e). On appeal, Ruckbi argues that the conduct of the proceedings below violated his due process rights. Because we conclude that the Illegal Immigration Reform and Immigrant Responsibility Act's ("IIRIRA") "transitional rules" divest the courts of appeals of jurisdiction over this category of claims, we dismiss Ruckbi's petition for lack of jurisdiction.

## I. BACKGROUND

Ruckbi is a thirty-two year old citizen of Syria who came to the United States on April 19, 1992, as a non-immigrant visitor for pleasure. He was authorized to remain in the United States until October 19, 1992. Ruckbi failed to depart by the required date or at any time thereafter. On October 22, 1993, the Immigration and Naturalization Service ("INS") issued an Order to Show Cause ("OSC") charging Ruckbi with deportability under INA § 241(a)(1)(B), 8 U.S.C. § 1251(a)(1)(B).

At an initial hearing on January 11, 1994, Ruckbi conceded deportability and sought a discretionary grant of adjustment of status based on his recent marriage to a United States citizen. Alternatively, Ruckbi sought a discretionary grant of voluntary departure. On April 15, 1994, Ruckbi submitted a written adjustment application.

### A. Adjustment of Status

Section 245 of the Act authorizes the Attorney General, in her discretion and under such regulations as she may prescribe, to adjust an alien's status to that of an alien lawfully admitted for permanent residence, provided that the alien meets certain statutory requirements. To be statutorily eligible for adjustment of status, the alien must show: (1) that he was inspected and admitted or paroled into the United States; (2) that he has made an application for such adjustment; (3) that he is eligible to receive an immigrant visa and is admissible to the United States for permanent residence; and, (4) that an immigrant visa is immediately available to him at the time his application is filed. *See* 8 U.S.C. § 1255(a). Once the alien has established threshold statutory eligibility, he must additionally demonstrate to the Attorney General's satisfaction that he merits relief in the exercise of discretion. *See Henry v. INS*, 74 F.3d 1, 4, 7 (1st Cir.1996).

In the written adjustment application that he submitted on April 15th, Ruckbi answered "no" to questions whether he had ever knowingly committed any crime of moral turpitude, or ever been arrested or charged for violating any law. At the merits hearing on May 12, 1994, Ruckbi revised his adjustment application to indicate a "yes" answer to the foregoing questions. Subsequently, per the IJ's order, Ruckbi produced his criminal record. The record indicated that between November 16, 1990 and September 3, 1993, Ruckbi was charged with thirty-six different offenses under several different aliases.[1] At his hearing, Ruckbi claimed that he was never criminally convicted of any of the charges against him.[2] During cross-examination, however, Ruckbi admitted the commission of the essential elements of several of the crimes with which he was charged.[3] As a result of these admissions, the IJ found Ruckbi inadmissible under § 212(a)(2)(A)(i)(I) of the Act and thus statutorily ineligible for adjustment of status relief.[4] The BIA affirmed the IJ's findings of inadmissibility and statutory ineligibility.

Additionally, the IJ denied Ruckbi's application for adjustment of status as a matter of discretion. The IJ concluded that "the respondent's history of criminal and fraudulent activity is so egregious as to make him a person who cannot show good moral character." The BIA affirmed the IJ's determination that Ruckbi did not merit relief in the exercise of discretion. Ruckbi now seeks review of the BIA decision.

### B. *Voluntary Departure*

█ In the event that his application for adjustment of status was denied, Ruckbi also sought a discretionary grant of voluntary departure. Under § 244(e) of the INA, the Attorney General may, in her discretion, permit an alien in deportation proceedings to depart voluntarily from the United States at his own expense in lieu of deportation. *See* INA § 244(e), 8 U.S.C. § 1254(e). To be statutorily eligible for voluntary departure, an alien must demonstrate to the Attorney General's satisfaction that he is and has been a person of good moral character for at least five years immediately preceding the date of his voluntary departure application. *See id.* As with adjustment, once an alien has established statutory eligibility for voluntary departure, he additionally must persuade the Attorney General that he merits a grant of relief in the exercise of discretion. *See Molina v. INS*, 981 F.2d 14, 17 (1st Cir.1992).

As discussed above, the IJ found that Ruckbi failed to establish his good moral character during the five years immediately preceding his application for voluntary departure. Additionally, the IJ concluded that Ruckbi did not merit relief in the exercise of discretion. The BIA affirmed both of these conclusions. Ruckbi appeals the BIA decision.

## II. DISCUSSION

The courts of appeals have jurisdiction to review final orders of deportation under the circumstances set forth at former section 106(a) of the Act, 8 U.S.C. § 1105a(a), as modified by "transitional rules" for judicial review established by section 309(c)(4) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–

---

1. The charged offenses include: (1) larceny by check; (2) larceny of property over $250; (3) forgery; (4) uttering a forged instrument; and, (5) using a false motor vehicle document.

2. According to the record, all of the charges against Ruckbi have been dismissed following payment of restitution, continued without a finding, or remain pending.

3. Specifically, the IJ found that Ruckbi admitted the commission of the essential elements of larceny by check under Mass. Gen. Laws ch. 266 § 37; larceny of property over $250 under Mass. Gen. Laws ch. 266 § 30; and forgery under Mass. Gen. Laws ch. 267 § 1.

4. Section 212(a)(2)(A)(i)(I) states:

   Except as provided in clause (ii), any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of—
   (I) a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime … is inadmissible.

   A showing of admissibility to the United States is a statutory prerequisite to adjustment of status relief under § 245 of the INA, 8 U.S.C. § 1255(a).

208, 110 Stat. 3009 (Sept. 30, 1996) ("IIRIRA"), as amended by Act of Oct. 11, 1996, Pub.L. No. 104–302, 110 Stat. 3657.

Congress enacted IIRIRA on September 30, 1996. Under IIRIRA there are two new sets of rules: the new permanent rules and the "transitional rules." *See* IIRIRA § 309(c). As stated in § 309(c)(1), the new permanent rules only apply to cases in which the INS instituted removal proceedings on or after April 1, 1997. *See id.* In contrast, the transitional rules apply to deportation proceedings commenced before April 1, 1997. *See id.* Because the deportation proceedings against Ruckbi were initiated before April 1, 1997, his claims are governed by the transitional rules.

█ Section 309(c)(4) of the IIRIRA "transitional rules" sets forth the changes Congress implemented with respect to judicial review of final orders of deportation or exclusion.[5] *See id.* Section 309(c)(4)(G) states: "there shall be *no appeal* permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered in section 212(a)(2) . . . ." IIRIRA § 309(c)(4)(G). Because Ruckbi admitted the commission of the essential elements of crimes covered by section 212(a)(2), this court is precluded by the plain language of section 309(c)(4)(G) from reviewing his claims.[6] *See id.* The section states that "there shall be no appeal," a clear reference to an appeal to the courts of appeals.

Ruckbi argues that any interpretation of § 309(c)(4)(G) that divests the courts of appeals of jurisdiction to review alleged constitutional violations is unconstitutional. However, Ruckbi's position is foreclosed by this circuit's recent decisions in *Goncalves v. Reno*, 144 F.3d 110 (1st Cir.1998), and *Santos v. INS*, 124 F.3d 64 (1st Cir.1997). In those cases we held that where judicial review is otherwise precluded by the IIRIRA's transitional rules, an alien cannot bring a constitutional challenge to his deportation order by means of a petition for review in the court of appeals, but must instead file a habeas petition in the district court. *See Goncalves*, 144 F.3d at 118, 123; *Santos*, 124 F.3d at 64; *cf. Kolster v. INS*, 101 F.3d 785, 790 (1st Cir. 1996) (holding that § 440(a) of Antiterrorism and Effective Death Penalty Act ("AEDPA") divests court of appeals of jurisdiction to hear petitions for review). The *Goncalves* court specifically addressed the constitutional concerns raised by Ruckbi and concluded that such an interpretation of § 309(c)(4)(G) posed no constitutional problems because residual jurisdiction existed in the district court over habeas corpus petitions. *See* 144 F.3d at 122, 123. In light of this circuit precedent, the petition for review is dismissed for lack of jurisdiction.

---

5. Section 309(c)(4)—entitled "Transitional Changes in Judicial Review"—applies to cases "in which a final order of exclusion or deportation is entered more than 30 days after [April 1, 1997] . . . ." In this case, the final order of deportation was entered on July 31, 1997—more than 30 days after April 1, 1997. The provisions of § 309(c)(4) thus govern the judicial reviewability of Ruckbi's claims.

6. Because we conclude that § 309(c)(4)(G) divests this Court of jurisdiction to hear the petition for review, we need not address the government's second jurisdictional argument under § 309(c)(4)(E).