**Rafael ALFARO–REYES, Petitioner,**

v.

**IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.**

---

Alfredo Duenas–Lopez, Petitioner,

v.

Immigration and Naturalization
Service, Respondent.

Julian Solorzano–Salas, Petitioner,

v.

Immigration and Naturalization
Service, Respondent.

Shervin Moini, Petitioner,

v.

Immigration and Naturalization
Service, Respondent.

Nos. 97–70443, 97–70511,
97–70524, 97–70641.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 4, 2000

Filed Aug. 3, 2000

Jan Joseph Bejar, San Diego, CA, for petitioners.

Kurt B. Larson (argued), Nelda C. Reyna (briefed), Office of Immigration Litigation, Civil Division, Department of Justice, Washington, D.C., for respondent.

Before: WALLACE, TROTT, and GOULD, Circuit Judges.

GOULD, Circuit Judge:

Petitioners Rafael Alfaro–Reyes, Alfredo Duenas–Lopez, Julian Solorzano–Salas and Shervin Moini are four lawful permanent resident aliens deportable because of their convictions for controlled substance offenses. Petitioners appeal their final orders of deportation by the Board of Immigration Appeals ("BIA"). They claim that their constitutional rights were violated when the BIA applied to their cases Antiterrorism and Effective Death Penalty Act of 1996 [1] ("AEDPA") section 440(d), which amended Immigration and Nationality Act ("INA") section 212(c), 8 U.S.C. § 1182(c), to preclude the discretionary relief from deportation that they seek. The threshold issue, however, is whether Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") section 309(c)(4)(G),[2] another amendment to the INA, divests this court of jurisdiction to hear such claims of constitutional error from a decision of the BIA on direct appeal. We have jurisdiction to determine our own jurisdiction. *Ye v. INS*, 214 F.3d 1128, 1131 (9th Cir.2000).

In *Magana–Pizano v. INS*, 200 F.3d 603, 607 (9th Cir.1999), this court held that IIRIRA section 309(c)(4)(G) divested it of jurisdiction to hear claims of statutory error on direct appeal from a decision of the BIA by aliens deportable because of convictions for certain specified criminal offenses. We now hold that IIRIRA section 309(c)(4)(G) also divests this court of jurisdiction to hear claims of constitutional error on direct appeal. We therefore dismiss the claims of Alfaro–Reyes, Duenas–Lopez, Solorzano–Salas and Moini for lack of jurisdiction.

---

1. Pub.L. No. 104–132, § 440(d), 110 Stat. 1214, 1277 (1996).

2. Pub.L. No. 104–208, § 309(c)(4)(G), 110 Stat. 3009–546, 3009–626 to 627 (1996).

## FACTUAL AND PROCEDURAL HISTORY

### A.

#### 1.

Rafael Alfaro–Reyes is a native and citizen of Mexico. He entered the United States on or about November 15, 1978. He gained lawful permanent resident status on October 4, 1990. On June 1, 1993, he was convicted of conspiracy to import over one hundred pounds of marijuana into the United States. As a result of his conviction, the Immigration and Naturalization Service ("INS") initiated deportation proceedings against him pursuant to INA section 241(a)(2)(B)(i), 8 U.S.C. § 1251(a)(2)(B)(i) (now codified at 8 U.S.C. § 1227). At his July 18, 1995 hearing, Alfaro–Reyes conceded deportability and requested discretionary relief from deportation under INA section 212(c). On March 24, 1997, the BIA issued a final order finding Alfaro–Reyes was statutorily ineligible for discretionary relief under INA section 212(c) because of its amendment by AEDPA section 440(d).

#### 2.

Alfredo Duenas–Lopez is a native and citizen of Mexico. He has been living in the United States since 1985 and gained lawful permanent resident status on December 1, 1990. On May 13, 1992, Duenas–Lopez was convicted of possession of three pounds of marijuana. On May 19, 1992, the INS initiated deportation proceedings, charging him with deportability pursuant to INA section 241(a)(2)(B)(i), because of his conviction of a controlled substance violation. On August 16, 1993, an Immigration Judge ("IJ") found Duenas–Lopez deportable and ineligible for INA section 212(c) discretionary relief. On April 3, 1997, the BIA affirmed and issued a final order of deportation.

#### 3.

Julian Solorzano–Salas is a native and citizen of Mexico. He gained lawful permanent resident status on June 25, 1965. On April 11, 1991, he was convicted of willful and unlawful purchase and possession of a controlled substance for sale, cocaine in excess of 100 pounds. The INS charged Solorzano–Salas with deportability pursuant to INA section 241(a)(2)(B)(i) for his conviction of a controlled substance violation. On June 17, 1996, an IJ found Solorzano–Salas deportable and statutorily ineligible for INA section 212(c) discretionary relief. On April 8, 1997, the BIA affirmed, issuing a final order of deportation.

#### 4.

Shervin Moini is a native and citizen of Iran. He immigrated to the United States in December 1978. He became a lawful permanent resident alien on November 25, 1985. On January 7, 1994, he was convicted of possession of methamphetamine, a controlled substance. This crime was one in a series that Moini committed while an addict. Moini has undergone drug treatment and has been drug free since 1994. On January 20, 1994, the INS charged Moini with deportability under INA section 241(a)(2)(B)(i) because of his conviction of a controlled substance violation. On May 8, 1997, the BIA issued a final order of deportation, finding him statutorily ineligible for INA section 212(c) relief. Moini petitioned this court to review the BIA's decision.

### B.

All Petitioners were convicted· of controlled substance violations, ranging from simple possession to dealing, in consequence of which the INS commenced deportation proceedings against them. While their proceedings were pending, Congress enacted AEDPA, which, *inter alia*, amended INA section 212(c) to bar the Attorney General from granting a discretionary waiver of deportation to individ-

uals who had been convicted of certain drug-related offenses, including the offenses of which petitioners had been convicted.[3] In each of Petitioners' cases, the BIA determined that in view of the enactment of AEDPA section 440(d), each was statutorily ineligible for a discretionary waiver of deportation.

Petitioners in this appeal claim that the BIA's application of AEDPA section 440(d) to them was impermissible in two respects. First, they contend that the BIA could not retroactively apply AEDPA section 440(d) to cases, such as theirs, which were pending at the time of its enactment. Second, Petitioners contend that the BIA violated their constitutional right to equal protection because it denied discretionary relief to them as deportable criminal aliens while granting INA section 212(c) relief to similarly situated criminal excludable aliens.

In *Magana–Pizano*, we held that IIRIRA section 309(c)(4)(G) divested us of jurisdiction to review on direct appeal claims of statutory violations raised by aliens who—similar to Petitioners—are deportable because of having been convicted of certain drug offenses. 200 F.3d at 607. Accordingly, we do not consider statutory claims here.[4]

In *Magana–Pizano*, however, we did not address the question whether we retain jurisdiction to consider on direct appeal claims of constitutional violations raised by these same categories of criminal aliens. Accordingly, before considering Petitioners' equal protection claims, we must decide whether we have jurisdiction to do so. Petitioners argue that Congress may not, consistent with due process, eliminate their ability to seek review of constitutional violations on direct appeal. For the reasons described below, we disagree.

## STANDARD OF REVIEW

■ The existence of subject matter jurisdiction is a question of law reviewed *de novo. See Milne v. Hillblom*, 165 F.3d 733, 735 (9th Cir.1999).

## DISCUSSION

In 1996, Congress enacted both AEDPA and IIRIRA into law. Before the enactment of either of these statutes, there was direct federal judicial review of deportation orders. *See* 8 U.S.C. § 1105a (1994), *repealed by* IIRIRA, Pub.L. 104–208, § 306(b), 110 Stat. 3009–612 (1996). Under the same provision, deportable aliens could seek review of their deportation orders by filing petitions for a writ of habeas corpus.

■ IIRIRA changed the judicial review structure through its permanent and transitional rules. IIRIRA's permanent rules do not apply to deportation cases that were pending before April 1, 1997, the effective date of IIRIRA's amendments; instead, the transitional rules, found in IIRIRA section 309(c), apply to BIA final orders issued after October 30, 1996 in deportation cases that were pending before April 1, 1997. *See Kalaw v. INS*, 133 F.3d 1147, 1150 (9th Cir.1997); *Magana–Pizano*, 200 F.3d at 607. Because the BIA issued Petitioners' final orders of deportation after October 30, 1996, and Petitioners' deportation proceedings all began before April 1, 1997, IIRIRA's transitional rules apply to Petitioners' cases.

Turning to the transitional rules, IIRIRA section 309(c)(4)(G) provides:

*[T]here shall be no appeal* permitted in the case of an alien who is inadmissible or deportable by reason of having com-

---

**3.** Specifically, AEDPA § 440(d) amended INA § 212(c) to bar discretionary relief to any alien who:

is deportable by reason of having committed any criminal offense covered in [INA] section 241(a)(2)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(i).

**4.** Petitioners are free to pursue these claims by means of a petition for a writ of habeas corpus. *See Magana–Pizano*, 200 F.3d at 609. We note that *Magana–Pizano* resolved the very statutory issue that petitioners apparently raise here—holding that AEDPA section 440(d) cannot be applied to deportation cases pending at the time it became law. *Id.* at 611.

mitted a criminal offense covered in section 212(a)(2) or section 241(a)(2)(A)(iii), (B), (C), or (D) of the Immigration and Nationality Act (as in effect as of the date of the enactment of this Act), or any offense covered by section 241(a)(2)(A)(ii) of such Act ... for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 241(a)(2)(A)(i) of such Act (as so in effect).

IIRIRA § 309(c)(4)(G) (emphasis added).

■ Petitioners are deportable because each has committed drug offenses covered by INA section 241(a)(2)(B), and thus IIRIRA section 309(c)(4)(G) appears to bar their appeals, precluding our review of their equal protection challenges to the BIA's discriminatory application of AEDPA section 440(d). Accordingly, we are squarely faced with the question that was not raised in *Magana–Pizano:* Whether IIRIRA section 309(c)(4)(G) divests this court of jurisdiction to hear constitutional challenges, as well as statutory challenges, on direct appeal.

■ To answer this question, we first address whether the statute should be interpreted to divest us of jurisdiction over such constitutional claims on direct appeal. "In interpreting statutes, we begin with the language of the statute itself." *Aragon–Ayon v. INS,* 206 F.3d 847, 851 (9th Cir.2000). "Where the plain meaning of a provision is unambiguous, that meaning is controlling." *Id.*

Applying these principles here, we conclude that IIRIRA section 309(c)(4)(G) is plain and unambiguous on its face. We read the clause stating "there shall be no appeal" as demonstrating a clear congressional mandate to divest the appellate courts of jurisdiction over direct appeals by deportable criminal aliens covered by IIRIRA section 309(c)(4)(G). Thus, the terms of the statute preclude direct appellate review of constitutional issues.

■ A literal reading of IIRIRA section 309(c)(4)(G), precluding direct review of constitutional claims, is consistent with one of the central purposes of IIRIRA, which was to prioritize the apprehension and removal of aliens involved in drug trafficking or other criminal activity. *See* IIRIRA § 659, 110 Stat. 3009–720. Our conclusion also is reinforced by the consistent and reasoned rulings of five other circuit courts of appeal. *See Pak v. Reno,* 196 F.3d 666, 672 n. 8 (6th Cir.1999); *Catney v. INS,* 178 F.3d 190, 196 (3d Cir.1999); *Ruckbi v. INS,* 159 F.3d 18, 21 (1st Cir. 1998); *Lerma de Garcia v. INS,* 141 F.3d 215, 217 (5th Cir.1998); *Jean–Baptiste v. Reno,* 144 F.3d 212, 218–20 (2d Cir.1998).

■ We must also consider a second issue, whether Congress has the authority under the Constitution to divest us of this jurisdiction consistent with due process. The U.S. Supreme Court has made it clear that "Congress has plenary authority in all cases in which it has substantive legislative jurisdiction so long as the exercise of that authority does not offend some other constitutional restriction." *INS v. Chadha,* 462 U.S. 919, 941, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983) (citations and quotations omitted). Here, any potential due process concern over Congress' elimination of direct appeals in these deportation cases is alleviated in the Ninth Circuit, because of the availability of habeas review for claims of both statutory and constitutional violations arising during deportation proceedings. *See Magana–Pizano,* 200 F.3d at 609. Other circuit courts of appeal holding that IIRIRA section 309(c)(4)(G) precludes direct review of constitutional questions have found the continued availability of the writ of habeas corpus to be relevant. *See Pak,* 196 F.3d at 671–73; *Catney,* 178 F.3d at 195–96; *Ruckbi,* 159 F.3d at 21; *Lerma de Garcia,* 141 F.3d at 217; *Jean–Baptiste,* 144 F.3d at 218–19.[5]

---

**5.** The only case to hold that IIRIRA section 309(c)(4)(G) does not eliminate constitutional review on direct appeal is *Musto v. Perryman,* 193 F.3d 888, 891 (7th Cir.1999). The *Musto* holding was the result of the Seventh Circuit's previous holding that AEDPA section 440(a) curtailed habeas relief in deportation cases.

Following this beaten path of persuasive precedent, we hold that because 28 U.S.C. § 2241 habeas corpus relief is available to review constitutional claims, Congress' preclusion of direct appeals in IIRIRA section 309(c)(4)(G) does not offend the Due Process Clause of the Constitution.

## CONCLUSION

For these reasons we hold that IIRIRA section 309(c)(4)(G) divests us of jurisdiction to hear constitutional claims on direct appeal. Accordingly, we DISMISS Petitioners' petitions for lack of jurisdiction.

See *LaGuerre v. Reno,* 164 F.3d 1035, 1040 (7th Cir.1998). The Seventh Circuit ruled that allowing constitutional review of direct appeals was necessary because of "the presumption that executive resolutions of constitutional issues are judicially reviewable." *Id.*

The Ninth Circuit has held that habeas review survived IIRIRA section 309(c)(4)(G) and therefore the concerns that motivated the Seventh Circuit in *Musto* are inapplicable here. See *Magana–Pizano,* 200 F.3d at 609.